MARC E. MAYER (SBN 190969)
mem@msk.com
DANIEL A. KOHLER (SBN 285501)
dxk@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff
Blizzard Entertainment, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC. a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1 through 10, inclusive.<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>(1) DIRECT COPYRIGHT INFRINGEMENT<br>(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT<br>(3) VICARIOUS COPYRIGHT INFRINGEMENT<br>(4) TRAFFICKING IN CIRCUMVENTION DEVICES<br>(5) BREACH OF CONTRACT<br>(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS<br><br>**DEMAND FOR JURY TRIAL** |

Mitchell Silberberg & Knupp LLP

6078135.5

Blizzard Entertainment, Inc. ("Blizzard") avers as follows:

**PRELIMINARY STATEMENT**

1.  Blizzard is a developer and publisher of computer games and related entertainment products. Blizzard is known for the high quality and extremely high production values of its computer games, which include some of the most popular computer game franchises in the world, such as "World of Warcraft," "Diablo" and "StarCraft." Blizzard's computer game "StarCraft II," released on July 27, 2010, is one of the most popular PC software products currently sold in the United States and is one of the most critically acclaimed computer games ever released.

2.  At issue in this lawsuit is the insidious and harmful practice of developing, distributing, and selling software products (sometimes referred to as "hacks" or "cheats") that modify or alter the online "multiplayer" component of Blizzard's computer games to give their users an unfair competitive advantage against other players. These hacks and cheats not only disrupt or impair the online experience for purchasers of the computer game, but, as set forth more fully herein, cause serious and irreparable harm to Blizzard and its products.

3.  Defendants are software programmers, or "hackers" who operate, collaborate on, and distribute unlawful hacks and cheats online. The hacks and cheats made available by Defendants, including a product known as the "ValiantChaos MapHack," modify the StarCraft II online game experience, to the detriment of legitimate StarCraft II users, and thus to Blizzard itself. Defendants create and sell their unlawful software products with the knowledge that they are facilitating and promoting users to infringe Blizzard's copyrights, to breach their contracts with Blizzard, and to otherwise violate Blizzard's rights.

4.  Defendants have unjustly profited from their actions while causing significant damage to Blizzard. The acts of Defendants, described in more detail below, constitute direct and secondary infringement of registered copyrights in

1

violation of the Copyright Act, 17 U.S.C. §501; trafficking in circumvention devices in violation of 17 U.S.C. § 1201(a)(2), breach of contract; and intentional interference with contractual relations.

## JURISDICTION AND VENUE

5.  This is a civil action seeking damages and injunctive relief under the Copyright Act, 17 U.S.C. § 101 et seq., the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 et seq., and under the laws of the State of California and Delaware.

6.  This Court has subject matter jurisdiction over Blizzard's claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Blizzard's state law claims for breach of contract and intentional interference with contract in that they are so related to Blizzard's claims under the Copyright Act as to be part of the same case or controversy.

7.  This Court has personal jurisdiction over Defendants, including because Defendants have engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and among other things, have purposefully directed their activities at the United States and at California.  Blizzard additionally avers that, among other things, (a) each of the Defendants or their respective agents are doing or have been doing business continuously in the State of California and this District, (b) a substantial part of the wrongful acts committed by Defendants, and each of them, have occurred in interstate commerce, in the State of California, and in the Central District of California, (c) Defendants know that the damages and other harmful effects of Defendants' infringing activities occur in the United States and primarily in California, where Blizzard has its principal place of business, and (d) Defendants'

infringing activities are part of a joint, international effort among defendants residing within the United States and outside the United States.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because this is a judicial District in which a substantial part of the events giving rise to the claims occurred, and/or in which Blizzard's injury was suffered.

## THE PARTIES

9. Blizzard is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California.

10. Blizzard is, and at all relevant times has been, the owner of copyrights in numerous computer software entertainment products, including the computer game "StarCraft II." StarCraft II is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

11. Blizzard is informed and believes, and on that basis avers, that each of the Defendants herein is engaged in the development, sale and/or distribution of software products designed to modify or hack Blizzard's StarCraft II online computer games. The primary purpose – indeed the only purpose - of such software products is to give their users unfair competitive advantages (i.e. to allow users to cheat) in StarCraft II. The software products developed, sold, and/or distributed by Defendants include, without limitation, the "ValiantChaos MapHack" ("VCMH") and other related or similar software programs (the "Hacks").

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1-10 inclusive, are unknown to Blizzard, which has therefore sued said defendants by such fictitious names. The defendants may include individuals whose real identities are not yet known to Blizzard, but who are acting in concert with the one another, often in the guise of Internet aliases, in committing the unlawful acts alleged herein. Blizzard

will seek leave to amend this complaint to state their true names and capacities once said defendants' identities and capacities are ascertained. Blizzard is informed and believes, and on that basis avers, that all defendants sued herein are liable to Blizzard as a result of their participation in all or some of the acts set forth in this complaint (all of the aforementioned defendants hereinafter collectively are referred to as "Defendants").

## FACTS APPLICABLE TO ALL CLAIMS
### Blizzard's StarCraft II Computer Game

13. Blizzard is a computer game publisher, engaged in the business of developing, financing, producing, marketing, and distributing high-quality software game products for personal computers. Among the software products produced and distributed by Blizzard are some of the most popular computer games in the world, including the StarCraft® series of games, as well as the massively popular Diablo®, Warcraft® and World of Warcraft® gaming franchises. Many of Blizzard's games, including the StarCraft® series of games, feature online game play over the Internet via Blizzard's online gaming service known as "Battle.net." Blizzard's games are enjoyed by millions of players worldwide.

14. The StarCraft® series of computer games currently consists of two games: "StarCraft" and "StarCraft II," as well as various "expansion packs" to each of these games (StarCraft II and its expansion packs are referred to collectively herein as "StarCraft II"). StarCraft II is a military science fiction "real-time strategy" computer game, in which the player plays one of three military factions competing to achieve certain military objectives on a computer-generated "map." The software code responsible for the extensive and richly detailed creative elements of the StarCraft II gaming environment is a copyrighted work owned by Blizzard.

15. Among the most important features of StarCraft II are its robust "multiplayer" modes, which enable multiple players to compete against each other via a connection to the Internet. The multiplayer environment often is highly competitive, with players being awarded "ranks," placed on public "leaderboards," or given access to unique weapons or abilities based on their performance. The competitive aspect of StarCraft II's multiplayer environment is one of the driving forces behind sales of the game. (In fact, the StarCraft® games are played as a competitive sport around the world, with professional or semi-professional players competing for national and international titles). Additionally, the ability to play the game against skilled human opponents keeps the player experience fresh and interesting, thus ensuring that players return to the game frequently, and play the game long after its release.

16. Unfortunately, the gaming experience of legitimate players of StarCraft II is under near constant attack by cheaters, scammers, and other wrongdoers seeking to exploit StarCraft II for their own illegitimate ends. For this reason, Blizzard seeks to protect the sanctity of the StarCraft II gaming experience through both technical and contractual measures.

### Blizzard's Technical Security Measures

17. In order to play StarCraft II, a user must first install and then "launch" the StarCraft II client software. When the StarCraft II client is launched, a copy of the program is loaded into the random access memory ("RAM") of the user's computer.

18. Blizzard employs a software program called "Warden" as a technical measure that prevents unauthorized access to StarCraft II, restricts users from loading unauthorized copies of StarCraft II, and otherwise monitors the game client and environment for malicious or unauthorized software processes.

5

19. When users launch the StarCraft II game client and authenticate to the StarCraft II game server, they must demonstrate that they are running an authorized copy of the game client, and that they are not using any unauthorized "hacks" or "cheats." Warden enforces Blizzard's rights by running targeted scans of the user's environment for the presence and/or use of "signatures" of known unauthorized third party programs that facilitate cheating or allow the modification of the StarCraft II interface, environment, and/or experience in any way not authorized by Blizzard. If Warden detects that a user is engaged in prohibited hacking or cheating activities, it will deny that user access to the StarCraft II game.

20. In order to circumvent Warden, a user running a hack or cheat program, including the Hacks, must prevent Warden from detecting it and thereby bypass its protections.

**Blizzard's Contractual Security Measures: The ToU and EULA**

21. All StarCraft II players are required to assent to Blizzard's contracts before they are able to play the game.[1]

22. Prior to installing the StarCraft II client software, users are required to create an account with Blizzard's Battle.net service. To create a Battle.net account, players must assent to a contract called the Battle.net Terms of Use ("ToU"). During the Battle.net account creation process, players are presented with the ToU and must manifest assent to the ToU by checking a box that states "I accept the Terms of Use applicable to my country of residence and if under 18 years old, agree and acknowledge that my parent or guardian has also reviewed and accepted

---

[1] Blizzard recently unified the two contracts discussed in this section into a single "Battle.net End User License Agreement" (available at http://us.blizzard.com/en-us/company/legal/eula.html). Accordingly, recent purchasers of StarCraft II may only have been required to assent to this single contract. However, *all* of the contracts discussed herein, including the Battle.net End User License Agreement, the Battle.net Terms of Use, and the StarCraft II End User License Agreement contain, for all intents and purposes, the same express prohibition against Hacks and Cheats as set forth in paragraphs 23, 25, and 26 of this complaint.

the Terms of Use on my behalf."  The user also may decline to enter into this contract by refusing to check this box, at which point the account creation process will terminate, denying access to the user.

23. Among other provisions, the ToU provides that the user may not:

(a) "use cheats, automation software (bots), hacks, mods or any other unauthorized third-party software designed to modify the Service, any Game or any Game experience;"

(b) "exploit the Service, a Game or any part thereof for any commercial purpose . . . ;"

(c) "use any unauthorized third-party software that intercepts, "mines", or otherwise collects information from or through any Game or the Service, including without limitation any software that reads areas of RAM used by any Game or the Service to store information about a character or a Game environment . . . ;"

(d) "modify or cause to be modified any files that are a part of any Game or the Service in any way not expressly authorized by Blizzard;"

24. In addition to the ToU, users must assent to a second contract called "STARCRAFT II END USER LICENSE AGREEMENT" ("EULA") at the time they seek to install the StarCraft II client software.  At the outset of the installation process, users are presented with the EULA, and must manifest assent to the EULA by clicking on a button labeled "Accept."  The user also may decline to enter into this contract by refusing to click this button, at which point the client installation will terminate, denying access to the user.

25. Among other provisions, the EULA contains an express limitation on the license, which provides that the user may not "use cheats, automation software

(bots), hacks, or any other unauthorized third-party software designed to modify the Game experience, including without limitation, mods that violate the terms of this License Agreement or the Terms of Use."

26. Additionally, the EULA provides that users may not:

(a) "in whole or in part, copy or reproduce (except as provided herein), translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game…"

(b) "exploit the Game or any of its parts for any commercial purpose..."

(c) "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play . . ., or as part of content aggregation networks..."

(d) "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using third party programs or tools"

27. The provisions of the ToU and EULA are designed to protect the integrity of the game by, among other things, preventing the very conduct demonstrated by the Defendants – providing certain players an unfair competitive advantage against other players. The ToU and EULA provide commercially reasonable contractual protection of Blizzard's rights in and to StarCraft II.

**Defendants' Unlawful Activities**

28. Blizzard is informed and believes, and on that basis avers, that each of Defendants, either individually or collectively, are engaged in the development, sale and/or distribution of software products (including without limitation, the Hacks) designed to modify or hack StarCraft II, in order to give users unfair competitive advantages (i.e. to allow users to cheat) in the game. Defendants' VCMH program, among other things, permits its user to view areas of the game "map" that are normally obscured, to monitor the other player's unit movements, and to access other information that normally is not available to the player. VCMH also automates certain tasks within the game. These gameplay changes give the player using VCMH a significant competitive advantage over others.

29. Blizzard is informed and believes, and on that basis avers, that Defendants themselves developed the Hacks, commissioned third parties to develop the Hacks, worked closely in concert with individuals who developed the Hacks, distributed the Hacks or caused the Hacks to be distributed, and/or otherwise participated in, directed, or oversaw the creation and distribution of the Hacks.

30. Blizzard is informed and believes, and on that basis avers, that Defendants themselves are users of the Hacks in that they download, install, and use the Hacks, copy StarCraft II copyrighted content into their computer's memory, and otherwise cause the Hacks to be used in connection with StarCraft II.

31. Defendants are well aware that they do not have any license, right, or authority to engage in any of the foregoing infringing activities. It is well-known to the public, and Defendants certainly know, that Blizzard owns the copyright in StarCraft II, and never has authorized Defendants to develop and/or distribute Hacks or other software that modifies StarCraft II or its online components. In fact, Blizzard is informed and believes, and on that basis avers, that each of Defendants reviewed and assented to the EULA and ToU, which specifically

prohibits the creation, dissemination, and use of cheating and modification software such as the Hacks.  Defendants know that by distributing and selling the Hacks, they are encouraging and inducing their users to violate the ToU and EULA.

32. Defendants are also well aware that Blizzard expressly prohibits and aggressively combats the unlawful circumvention of its Warden program. Nonetheless, on information and belief, Defendants have designed the Hacks to include so-called "Warden Protection," (i.e. circumvention functionality) a feature that they have touted on online public message boards and forums.

33. The harm to Blizzard from Defendants' conduct is immediate, massive and irreparable.  By distributing the Hacks to the public, Defendants cause serious harm to the value of StarCraft II.  Among other things, Defendants irreparably harm the ability of Blizzard's legitimate customers (i.e. those who purchase and use unmodified games) to enjoy and participate in the competitive online experience of StarCraft II.  That, in turn, causes users to grow dissatisfied with the game, lose interest in the game, and communicate that dissatisfaction. This results in lost sales of the game and/or "add-on" packs and expansions thereto, as well as harm to Blizzard's reputation, the value of its game, and other harms to Blizzard.

## COUNT I

### Direct Copyright Infringement

34. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 33, inclusive, and incorporates them by reference herein.

35. Blizzard owns valid copyrights in StarCraft II.

36. Defendants have infringed Blizzard's copyrights in StarCraft II, including by reproducing and adapting StarCraft II without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.  Such infringing conduct

includes, but is not limited to copying and adapting StarCraft II to create the Hacks (including through the process of reverse engineering or decompiling StarCraft II to create the Hacks); and creating a derivative work of StarCraft II by modifying it via the installation and use of the Hacks.

37. Each such infringement by Defendants of StarCraft II constitutes a separate and distinct act of infringement.

38. Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of Blizzard.

39. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

40. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

41. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in StarCraft II. Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT II

### Contributory Copyright Infringement

42. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 41, inclusive, and incorporates them by reference herein.

43. When users of the Hacks download, install, and use the Hacks, they directly infringe Blizzard's copyright in StarCraft II, including by creating unauthorized derivative works of StarCraft II in violation of the Copyright Act. 17 U.S.C. §§ 106, 501.

44. Defendants have actual and constructive knowledge of the infringements encouraged by the provision of the Hacks. Defendants have materially contributed to the foregoing infringements, including by creating the Hacks, making the Hacks available to the public, instructing users how to install and operate the Hacks, and updating and modifying the Hacks to ensure that they continue to function effectively despite Blizzard's attempts to disable them. Defendants also have induced users of the Hacks to engage in the foregoing copyright infringement, including, among other things, by promoting the Hacks and providing users of the Hacks with the tools to infringe, instructions on how to install and use the Hacks, instructions on how to use the Hacks in a manner least likely to be caught or arouse suspicion, and the ability to infringe anonymously. As a direct and proximate result, Defendants' users have infringed Blizzard's rights in StarCraft II.

45. Each such infringement by users of the Hacks constitutes a separate and distinct act of infringement.

46. Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of Blizzard.

47. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

48. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

49. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT III

### Vicarious Copyright Infringement

50. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 49, inclusive, and incorporates them by reference herein.

51. When users of the Hacks download, install, and use the Hacks, they directly infringe Blizzard's copyright in StarCraft II, including by creating unauthorized derivative works of StarCraft II in violation of the Copyright Act. 17 U.S.C. §§ 106, 501.

52. Defendants have the right and ability to supervise and control the infringing conduct of users of the Hacks. Defendants have failed and refused to exercise such supervision and control to limit infringement to the extent required by law. As a direct and proximate result of such refusal, users of the Hacks have infringed Blizzard's copyrights in StarCraft II.

53. Defendants derive a direct financial benefit from this infringement, including, but not limited to, from sales of the Hacks and from financial "donations" from users of the Hacks.

54. Each such infringement by users of the Hacks constitutes a separate and distinct act of infringement.

55. Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of Blizzard.

56. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

57. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

58. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzards' copyrights. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT IV
### Trafficking in Circumvention Devices, 17 U.S.C. § 1201(a)(2)

59. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 58, inclusive, and incorporates them by reference herein.

60. Blizzard has implemented technological measures, including Warden, that effectively control access to StarCraft II.

61. The Hacks (1) are comprised of or contain technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing technological measures that effectively control access to StarCraft II, and that protect the exclusive rights of copyright owners; (2) have no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to copyrighted work and that protects the exclusive rights of copyright owners; and/or (3) are

marketed by Defendants with knowledge of its use to circumvent Blizzard's technological access controls and copyright protection.

62. As a result of the foregoing, Defendants are offering to the public, providing, or otherwise trafficking in technology in violation of 17 U.S.C. § 1201(a)(2).

63. Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization, or consent of Blizzard.

64. Defendants have violated Section 1201 of the DMCA willfully and for private commercial gain.

65. Defendants' conduct has caused damage to Blizzard and has unjustly enriched Defendants, in an amount to be proven at trial.

66. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to violate Section 1201 of the DMCA. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

67. As a direct and proximate result of Defendants' conduct, pursuant to 17 U.S.C. § 1203(c), Blizzard is entitled to profits attributable to Defendants' violations of 17 U.S.C § 1201.

68. Alternatively, Blizzard is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c), in the amount of $2,500 with respect to each act of circumvention, device, product, component, offer, or performance of service. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT V

**Breach of Contract**

69. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 68, inclusive, and incorporates them by reference herein.

70. Defendants' actions, as stated above, constitute breach of the EULA and ToU entered into or agreed to by Defendants, in violation of the laws of the States of Delaware and California, by reason of which Blizzard has suffered and will continue to, suffer harm and irreparable injury.

## COUNT VI

**Intentional Interference with Contractual Relations**

71. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 70, inclusive, and incorporates them by reference herein.

72. As described herein, before playing the game, licensed users of StarCraft II must first assent to the EULA and the ToU, thereby creating contracts between the users and Blizzard. Among other provisions, the EULA provides that the user may not "use cheats, automation software (bots), hacks, or any other unauthorized third-party software designed to modify the Game experience, including without limitation, mods that violate the terms of this License Agreement or the Terms of Use." Likewise, the ToU provides that the user may not, under any circumstances, "use cheats, automation software (bots), hacks, mods, or any other unauthorized third-party software designed to modify the [Battle.net] Service, any Game, or any Game experience."

73. Blizzard's contracts with its users are valid and enforceable.

74. Blizzard is informed and believes, and on that basis avers, that Defendants are aware of the contracts between Blizzard and its users, and additionally are aware of the Blizzard EULA and ToU by virtue of their own personal Starcraft II and Battle.net accounts. Defendants specifically are aware

that the EULA and ToU prohibit StarCraft II players from using or providing unauthorized hacks/cheats. Nevertheless, Defendants intentionally induce users of StarCraft II to use the Hacks in breach of StarCraft II users' contracts with Blizzard.

75. By inducing licensed users to breach their contracts with Blizzard, Defendants intentionally interfere with the contracts between Blizzard and licensed users of StarCraft II.

76. Defendants' actions were committed willfully and knowingly. Defendants knowingly induced breaches with an improper motive, namely to profit from "donations" or other fees received from players for the Hacks, which harm the StarCraft II game experience and which Defendants knew Blizzard prohibited.

77. As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including but not limited to loss of goodwill among StarCraft II users, diversion of Blizzard resources to attempt to prevent the development of hacks, loss of revenue from terminated users, and decreased revenue.

78. Defendants' intentional interference with the contracts between Blizzard and its licensed users entitle Blizzard to injunctive relief and compensatory damages, and other available relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including but not limited to, an Order:

1. Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with them from: (i) infringing Blizzard's copyrighted works; (ii) inducing or contributing to third party

infringements of Blizzard's copyrighted works; (iii) trafficking in the Hacks or any other software that that circumvents Blizzard's access and/or copy control technologies; (iv) intentionally interfering with Blizzard's contracts with players; and (v) violating the StarCraft II EULA and Battle.net ToU.

2. Requiring Defendants to shut down the Hacks and any colorable copy thereof, hosted at any domain, address, location, or ISP within the jurisdiction of this Court.

3. Requiring Defendants to deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights described herein.

4. Requiring Defendants to provide Blizzard with an accounting of any and all sales of products or services that infringe or violate any of Blizzard's rights described herein.

5. Awarding Blizzard monetary relief including damages sustained by Blizzard in an amount not yet determined, including actual or statutory damages for copyright infringement and willful copyright infringement under 17 U.S.C. §§ 504 and 1203, as appropriate.

6. Awarding Blizzard its costs and attorneys' fees in this action pursuant to 17 U.S.C. §§ 505 and 1203 and other applicable laws.

7. Awarding such other and further relief as this Court may deem just and appropriate.

DATED: May 19, 2014

MITCHELL SILBERBERG & KNUPP LLP
MARC E. MAYER
DANIEL A. KOHLER

By: /s/ Marc E. Mayer
Marc E. Mayer
Attorneys for Plaintiff Blizzard Entertainment. Inc.

## JURY DEMAND

Plaintiff Blizzard Entertainment, Inc. ("Blizzard") hereby demands a trial by jury on all matters and issues so triable.

DATED: May 19, 2014

MITCHELL SILBERBERG & KNUPP LLP
MARC E. MAYER
DANIEL A. KOHLER

By: /s/ Marc E. Mayer
Marc E. Mayer
Attorneys for Plaintiff Blizzard Entertainment, Inc.

6078135.5